**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

KENNETH CHAPMAN,                    :

      Plaintiff,                           :

vs.                                 :           CA 10-0675-WS-C

WESTERN EXPRESS, INC.,              :

      Defendant.                          :

_____

KENNETH CHAPMAN,                    :

      Plaintiff,                           :

vs.                                 :           CA 11-0180-WS-C

SOUTHERN REFRIGERATION
TRANSPORTATION,                     :

      Defendant.                          :

## REPORT AND RECOMMENDATION

This cause is before the Court for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the legal viability of the *pro se* plaintiff's claims asserted against the named defendants.  On May 19, 2011, a status hearing was conducted in these actions and one action currently pending before United States District Judge Callie V.S. Granade—*Chapman v. Wright Transportation*, CA 11-0097-CG-C—for the purpose of determining the factual underpinnings for plaintiff's claims asserted against the defendants and to determine whether plaintiff desired to continue

to pursue his lawsuits.[1]  Upon consideration of the information supplied during the hearing on May 19, 2011, as well as all pertinent materials contained in each of Mr. Chapman's cases, it is determined both that plaintiff has voluntarily agreed to dismiss all claims asserted against the above-named defendants and, also, to the extent that Mr. Chapman may have felt undue pressure to dismiss his claims, all claims asserted by plaintiff against Western Express and Southern Refrigeration are due to be dismissed because, as to each defendant, plaintiff has failed to state a claim upon which relief may be granted.

## FINDINGS OF FACT

1.      In July of 2006, plaintiff applied to work for defendant Western Express. (*See* CA 10-0675-WS-C, Doc. 32.)   Chapman notably claims that he withdrew his application two days later and that he did not take a pre-employment drug screen, as is the normal practice in the trucking industry.

2.      Sometime between May, 2008 and October, 2008, while plaintiff was working for Smithway Motor Express (SMX), Western Express bought SMX.  After that

_____

[1]      In addition to the presence of Mr. Chapman at the hearing, defendant Western Express, Inc. was represented by Kristin Ashworth, Esquire, and Mr. Wright was present on behalf of Wright Transportation.   At the time of the hearing, the undersigned had not ruled upon plaintiff's motion to proceed without prepayment of costs and fees with respect to Southern Refrigeration Transportation.   Although the undersigned granted plaintiff's IFP motion in this last case (CA 11-0180-WS-C, Doc. 3) during the course of the hearing, there is no need to serve Southern Refrigeration with process given the contents of the instant report and recommendation.

purchase, plaintiff was involved in a work-related accident. Jim Jackson, Director of Safety for Western Express, terminated plaintiff in October of 2008 for falsifying his employment application; specifically because he had not divulged that he failed a pre-employment drug screen in 2006. Western produced as part of its initial disclosures an internal document showing a failed drug test naming plaintiff; however, that document reflects a social security number that differs slightly from that of plaintiff. (*See* CA-11-180-WS-C, Doc. 11.) As previously indicated, plaintiff contends he never took a pre-employment drug screen for Western Express in 2006.

3. From August 30 through September 1, 2010, plaintiff attended a job orientation session with Southern Refrigeration Transportation. Plaintiff was informed by Southern Refrigeration's Director of Safety, Eric Nelson, that his counterpart at Western Express, Jim Jackson, orally informed him that plaintiff had violated the drug and alcohol policy within the last three years. (*See* CA 10-0675-WS-C, Docs. 26-27.) Plaintiff asserts that his employment record through DAC Services, a trucking industry record keeper, reflects that he was terminated by Western Express for falsifying his employment application. (*See id.*, Doc. 27.)

4. Plaintiff contends that since DAC Services only reports information generated in a three-year time span, a dirty drug screen from 2006 should not have appeared on his record, and Western Express should have been precluded from

disseminating the results to Southern Refrigeration on September 1, 2010, more than three years later.  (*See* CA 10-0675-WS-C, Doc. 1; CA-11-180-WS-C, Doc. 11.)

5.     Only after plaintiff was denied employment with Southern Refrigeration, as well as several other trucking companies, did Chapman filed an EEOC charge of discrimination against Western Express.  (*See* CA 10-0675-WS-C, Doc. 1.)   Indeed, Chapman's charge of discrimination against Western Express was signed by him on November 5, 2010, received by one EEOC office on November 8, 2010, and, finally, received by the EEOC office in Mobile on November 15, 2010.  (CA 10-0675-WS-C, Doc. 16, Exhibit A, CHARGE OF DISCRIMINATION.)

6.     Plaintiff filed his complaint against Western Express, Inc., and two other defendants,[2] in this Court on December 6, 2010.  (CA 10-0675-WS-C, Doc. 1.)  Plaintiff alleged that he was unlawfully terminated on account of his race and age by Western Express in October of 2008 and, as well, that Western Express was misinforming potential employers in September of 2010 that he was terminated because he used illegal drugs.  (*See id.*)

7.     Western Express's January 12, 2011 motion to dismiss (CA 10-0675-WS-C, Doc. 11) was granted in part and denied in part on February 28, 2011 (*id.*, Doc. 48). Plaintiff's Title VII and ADEA discriminatory discharge claims were dismissed due to

---

[2]     Total Transportation was dismissed with prejudice on January 20, 2011 (CA 10-0675-WS-C, Doc. 25), and Knight Transportation was dismissed with prejudice on April 16, 2011 (*see id.*, Doc. 75).

his failure to exhaust administrative remedies (*id.* at 4); however, Chief Judge Steele determined that plaintiff's race/age discrimination claims relating to false employment references in September 2010 survived Western Express's Rule 12(b)(6) challenge (*id.* at 5).[3]

8.      Plaintiff filed an EEOC charge of discrimination against Southern Refrigeration sometime, it appears, in March of 2011 alleging that he was not hired by Southern on account of his race in violation of Title VII of the Civil Rights Act of 1964. (*See* CA 11-0180-WS-C, Doc. 1, CHARGE OF DISCRIMINATION, at 1.)  "I was

---

[3]      Chief Judge Steele addressed in this order "more than a dozen other largely unnecessary submissions, most of them by Chapman." (*Id.* at 5.)

> The majority of these documents do not merit comment.  Nonetheless, in deference to plaintiff's *pro se* status, the Court directs him as follows: When plaintiff wishes to file a response to a pending motion, he must file—on or before the enumerated response deadline—a **single, consolidated document** (attaching any exhibits or legal memoranda that he deems appropriate) setting forth the factual, legal and procedural grounds for that response.  He **must not** clog the record, as he has here, with a multitude of piecemeal filings addressing one aspect or another of that motion, then expect the Court to cobble together those fragmentary submissions into a unified whole.  The same goes for any motion that Chapman might wish to file.  The motion and any supporting brief or exhibits must all be submitted together, as a single filing.  He does not help himself or this Court by filing numerous overlapping, disconnected and separate submissions on the same issue at the same time.  ***Plaintiff is cautioned that failure to abide by this requirement in the future may result in his filings being stricken without prior notice for failure to abide by the orders of this Court and for needlessly multiplying these proceedings.***

(*Id.* at 5-6 (emphasis in original).)

informed on 09/01/2010 that I will not be hired. I was told that I was not eligible for hiring because of a drug/alcohol violation within the past three years and they can not hire a person of my stature." (*Id.*)

9.      On April 7, 2011, the EEOC notified plaintiff that it was dismissing his charge of discrimination. (CA 11-0180-WS-C, Doc. 1, Dismissal and Notice of Rights.) This correspondence also advised plaintiff of his "right to sue." (*Id.*) Five days later, on April 12, 2011, plaintiff filed suit in this Court against Southern alleging that the defendant failed to hire him on account of his race in violation of Title VII and also that Southern conspired with Western Express not to hire him. (*See* CA 11-0180-WS-C, Docs. 1 & 7.)

10.      During the hearing on May 19, 2011, Plaintiff informed the undersigned that he had no evidence and no hope of establishing any evidence that Western Express furnished false employment references to potential employers (in September of 2010) on account of his race or age. In addition, plaintiff also informed the undersigned that he had no evidence and no hope of establishing any evidence that Southern Refrigeration failed to hire him on account of his race; rather, he admitted that the reason Southern Refrigeration failed to hire him was because of Western Express's negative employment reference.

11.      Following the status hearing, the undersigned ordered a stay in all three of Chapman's cases in order to go over all the pleadings and issue this report and

recommendation, as well as the report and recommendation in Chapman's case on Judge Granade's docket. (*See, e.g.,* CA 10-0675-WS-C, Doc, 86, at 2-3 ("Based on the information gathered during the conference and after consideration of all pertinent pleadings in the three cases, the undersigned will issue a report and recommendation in each case that plaintiff's claims be dismissed for the reasons discussed with him during the status conference. Plaintiff will of course have an opportunity to file objections to the report and recommendations once they are issued. But until then—in the interest of conserving the resources of the Court and the parties and promoting the efficient resolution of this matter—the undersigned **ORDERS** the schedule in all three cases **STAYED**.").) Despite this directive, plaintiff has continued to submit various pleadings (*see, e.g.,* CA 10-0675-WS-C, Docs. 88-95).[4]

## **CONCLUSIONS OF LAW**

1.      Kenneth Chapman is a *pro se* litigant. As such, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Even though courts are given leave to liberally construe pleadings of *pro se* litigant in recognition of their lack of formal legal education, "this leniency does not

---

[4]      Notably, in his case against Western Express, this Court entered a Rule 16(b) scheduling order on March 2, 2011, which provides, in relevant part, that all "[m]otions for leave to amend the pleadings and to join other parties must be filed no later than **March 31, 2011**." (CA 10-0675-WS-C, Doc. 56, at ¶ 4 (emphasis in original).)

give a court license to serve as de facto counsel for a party[.]" *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, ___ U.S. ____, ____, 129 S. Ct. 1937, 1950 (2009) (citation omitted).  In addition, courts are not required to, "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* (citation omitted).

2.     28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii) provide that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted[.]"  "A complaint is frivolous if it is without arguable merit either in law or in fact."  *Williams v. St. Vincent Hosp.,* 258 Fed. Appx. 293, 294 (11th Cir. 2007) (per curiam) (citing *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001)).  The court in *Williams* went on to state that § 1915 "accords judges not only the authority to dismiss a claim based on [an] indisputably meritless legal theory, but also the ***unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless***."  *Id.* (quoting *Bilal*, 251 F.3d at 1349) (emphasis added).

3.     Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted.  Such a motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth

in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). All factual allegations, moreover, are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

4. Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, ___ U.S. ____, ____, 129 S. Ct. 1937, 1949 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at __, 129 S. Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. at ___, 129 S. Ct. at 1950-1951 (a plaintiff must nudge his claims "across the line from conceivable to plausible."); *see Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion.  Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

5.     "To make a *prima facie* case of discriminatory failure-to-hire, a plaintiff must show that (1) []he was a member of a protected class; (2) []he applied for and was qualified for an available position; (3) []he was rejected; and (4) the defendant filled the position with a person outside the protected class."  *Childress v. Caterpillar Logistics*

*Servs., Inc.*, 369 Fed. App'x 95, 96 (11th Cir. 2010) (per curiam) (citing *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274-1275 (11th Cir. 2002)); *see also Lane v. Broward County, Fla.*, 411 Fed. App'x 272, 273 (11th Cir. 2011) (per curiam) ("To establish a prima facie case of failure to hire, the plaintiff must show that '(1) []he was a member of a protected class; (2) []he applied and was qualified for a position for which the employer was accepting applications; (3) despite h[is] qualifications, []he was not hired; and (4) the position remained open or was filled by another person outside of h[is] protected class.'").

6. Chapman alleges that Southern Refrigeration failed to hire him after three days of orientation (i.e., August 30, 2010 to September 1, 2010) based upon information its Director of Safety, Eric Nelson, verbally received from his counterpart at Western Express, Jim Jackson, that plaintiff had failed a drug test. Plaintiff stressed at the May 19, 2011 Hearing that this was the sole reason he was not hired by Southern Refrigeration, and that he had no evidence tending to support any allegation that he was not hired on account of his race. While this information satisfies the first three elements of a *prima facie* failure-to-hire claim, plaintiff nowhere alleges in the written documents submitted in *Chapman v. Southern Refrigeration Transportation*, nor did he contend at the status conference on May 19, 2011 that Southern Refrigeration filled the position he was seeking with a person outside his protected class. Instead, as aforesaid, plaintiff stressed to this Court that Southern Refrigeration was influenced not to hire

him by the negative employment reference received from Western Express and not because of anything having to do with his race. Accordingly, given plaintiff's lack of information concerning the fourth element of a *prima facie* failure-to-hire claim, this claim asserted against Southern Refrigeration has no facial plausibility and must be dismissed. *Cf. White v. Florida Dep't of Highway Safety & Motor Vehicles*, 343 Fed. App'x 532, 535 (11th Cir. 2009) (plaintiff failed to make out a *prima facie* case of discrimination because he did not identify "any non-minority individual who was hired with a background 'nearly identical' to his."), *cert. denied*, ___ U.S. ___, 130 S.Ct. 1156 (2010).[5]

7.    Plaintiff also alleges that Southern Refrigeration conspired with Western Express to not hire him. (*See* CA 11-0180-WS-C, Doc. 1.)

> To state a claim under § 1985(3), a plaintiff must allege: (1) defendants
> engaged in a conspiracy; (2) the conspiracy's purpose was to directly or

---

[5]    Although Chapman's failure to state a *prima facie* case is, alone, grounds to dismiss his discriminatory failure-to-hire claim, *see, e.g.*, *Peterson v. Prosser*, No. C08-4005-MWB, 2008 WL 835728, at *6 (N.D. Iowa Mar. 25, 2008) (concluding that a plaintiff's failure "to include allegations constituting a prima facie case of 'failure to hire' or other employment discrimination" mandated that those "claims [be] dismissed"), *report & recommendation adopted*, 2008 WL 1836665, his admission during the status hearing on May 19, 2011 that the reason he was not hired by Southern was not because of his race but because of Western's negative employment reference—even if plaintiff could somehow satisfy his *prima facie* burden—shows that he has no hope of establishing that the reason for Southern not hiring him was a pretext for unlawful racial discrimination. Because there exists no discriminatory animus, plaintiff's Title VII discriminatory failure-to-hire claim fails. *Compare White*, 343 Fed. App'x at 535, *with Lane*, 411 Fed. App'x at 274 ("[E]ven assuming that Lane established a prima facie case of race discrimination, she did not argue before the district court that the County's proffered reason for not hiring her—that it reclassified and never filled the position—was illegitimate or a pretext for discrimination.").

indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment. These rights include only select "serious constitutional right[s]."

The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude. Conversely, the Supreme Court has declared the freedom of speech, **and the rights protected under Title VII**, insufficient to form the basis of § 1985(3) actions against private conspirators.

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (internal citations omitted) (emphasis added). Because a conspiracy to violate rights protected by Title VII cannot form the basis of a § 1985(3) conspiracy claim, *see id.*, the undersigned finds that Chapman has likewise failed to state a conspiracy claim against Southern Refrigeration (and Western Express).

8.    The undersigned turns finally to Chapman's allegation that Western Express provided false information to prospective employers in September of 2010 on the basis of his race and age. (*See* CA 10-0675-WS-C, Doc. 48, at 5 n.3.) Given not only that the issue of providing false information to prospective employers arose in the majority of cases cited by Chief Judge Steele in the retaliation context, *see Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178 & 178-179 (2nd Cir. 2005) ("Before we reach the second step of the burden-shifting analysis in this Title VII retaliation case, we

address the district court's dismissal of Jute's allegation that Hamilton retaliatorily furnished a negative job reference. . . . [W]e hold that a reasonable jury, after hearing the defendant's evidence to the contrary, could find that Yost's *false* statement negatively affected Jute's chances of securing employment."); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 & 1035 (10th Cir. 2004) ("[A]n act by an employer that does more than *de minimis* harm . . . to a plaintiff's future employment *prospects* can . . . be regarded as an adverse employment action[.] . . . Consequently, Hillig has shown she suffered an 'adverse employment action' and the judgment against her as a matter of law and for DFAS on her Title VII retaliation claim was inappropriate."); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (in the context of analyzing plaintiff's retaliation claim, the court noted that "[a]mong those employment decisions that can constitute an adverse employment action are . . . dissemination of a negative employment reference . . . ."); *Attaie v. Telex Communications, Inc.*, No. 4:08CV3227, 2009 WL 5214875, *4 & *5 (D. Neb. Dec. 22, 2009) (in analyzing the plaintiff's retaliation claims, the court noted that negative employment references may constitute adverse employment action under Title VII if defendant disseminated false information that prospective employer would view as material to hiring decision), ***but, more importantly***, Chapman's admission during the May 19, 2011 Hearing that he had no evidence or hope of establishing evidence that Western Express furnished negative employment references to potential employers in

September of 2010 on account of his age or race,[6] the undersigned considers Chapman's dissemination of false information claim in the retaliation context.

9.      To establish a claim *prima facie* case of retaliation, a plaintiff "must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events." *Laosebikan v. Coca-Cola Co.*, 167 Fed. App'x 758, 764 (11th Cir. 2006) (per curiam); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) ("It is well established in this circuit that to successfully allege a prima facie retaliation claim under Title VII . . ., a plaintiff must show that (1) []he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.").

---

[6]      Such claims would fail even without Chapman's admission.  It is clear in this circuit that in order to prove a *prima facie* case of race or age discrimination a plaintiff must prove that: "'(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.'"  *Morton v. Astrue*, 380 Fed. App'x 892, 894 (11th Cir. 2010) (quoting *Maynard v. Board of Regents of Div. of Univs. of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003)).  In this case, Chapman has offered no evidence—nor has he provided the undersigned with any hope that he will uncover any evidence, which would suggest, much less establish—that he was treated less favorably than a similarly-situated individual outside his protected class.  More specifically, Chapman has no evidence suggesting that Western Express gave to non-African American (or young) former employees who were seeking jobs good job references despite its belief that those former employees had contravened the trucking industry's drug and alcohol policy.  Because plaintiff has no hope of establishing a *prima facie* case of race or age discrimination in the context of negative employment references, his Title VII and ADEA claims fail.

Protected expression involves opposing an employment practice made unlawful under Title VII or charging, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. Statutorily protected expression includes complaining to superiors about harassment in the work place, lodging complaints with the EEOC and participating in [a] discrimination-based lawsuit. To establish the causal link requirement, the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated. The plaintiff must at least establish that the employer was actually aware of the protected expression at the time it took adverse employment action against the plaintiff.

*Laosebikan,* 167 Fed. App'x at 763 (internal citations omitted).

10.    The Eleventh Circuit has held that "[a] 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Finally, "[a]n adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges or employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) (citation omitted), *cert. denied*, 531 U.S. 1076 (2001).

11.    As noted by Chief Judge Steele, courts around the country have determined that false or negative employment references are actionable as adverse employment actions (*see* CA 10-0675-WS-C, Doc. 48, at 5 n.3). Accordingly, the undersigned begins with the premise that Western Express's employment references in

September of 2010 constituted adverse employment actions.  However, as aforesaid, there still must be protected expression and, as well, there must be a causal connection between the employee engaging in a protected activity (such as filing an EEOC charge of discrimination) and the employer's adverse action.  *See Hopkins v. Saint Lucie County School Bd.*, 399 Fed. App'x 563, 567 (11th Cir. 2010) (per curiam) (employer's failure to provide reference, even if it could be proved as a materially adverse action, was moot because employee had failed to prove a causal connection between the failure to provide a reference and his administrative complaints to the Florida Commission on Human Relations and the EEOC).

12.     The first and third retaliation requirements are where plaintiff's claim against Western Express falters.  As to the first prong, plaintiff could not, as a matter of law, have engaged in protected expression at the time Western Express gave Chapman negative employment references in September of 2010 because he had not yet filed his EEOC charge of discrimination against Western Express.[7]  *Anduze v. Florida Atlantic*

---

[7]     That, of course, did not come until November of 2010.  And even in cases giving a broad interpretation to what may, for purposes of stating a claim, constitute post-termination retaliatory conduct, *see, e.g., Passer v. American Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991) (reversing district court decision to dismiss a plaintiff's retaliation claim under the ADEA, finding that, for purposes of a motion to dismiss, the allegation that an employer's "cancellation of [a] seminar [in plaintiff's honor, which] humiliated him before the assemblage of his professional associates and peers from across the nation, and made it more difficult for him to procure future employment," constituted "conduct having an adverse impact on the plaintiff") (citation omitted); *Baker v. Summit Unlimited, Inc.*, 855 F. Supp. 375, 377 (N.D. Ga. 1994) (an "allegation that Defendants
(Continued)

*University*, 151 Fed. App'x 875, 877 (11th Cir. 2005) (per curiam) (affirming district court's finding that Anduze "did not establish a *prima facie* case of retaliation" because her EEOC charge was filed more than a month ***after*** her employer "considered Anduze to have abandoned her job"; "Thus, Anduze could not, as a matter of law, have engaged in protected activity under the Participation Clause at the time she was considered to have abandoned her position, because she had not yet filed a charge with the EEOC. Furthermore, Anduze could not satisfy the ***third prong*** of a *prima facie* retaliation case— showing a causal relation between the protected activity and adverse employment activity—***for these same reasons***.") (citation omitted and emphasis added), *cert. denied*, 547 U.S. 1193 (2006); *see also Hopkins v. Saint Lucie County Sch. Bd.*, 399 Fed. App'x 563, 566-67 (11th Cir. 2010) (per curiam) (in case also involving a *pro se* litigant, the Eleventh Circuit affirmed the district court's dismissal of plaintiff's retaliation claim, noting that

---

have not allowed Plaintiff, acting as a parent designee in picking up children at the center, to enter the classrooms like other parents and their designees, however, is actionable" because "the refusal to allow Plaintiff to pick up children in the same manner as other parents may constitute an adverse employment action since it may impact on her ability to perform this service for parents and thereby decrease her income correspondingly"), the alleged retaliation occurred ***after*** the former employee engaged in protected conduct. *See Passer*, 935 F.2d at 330 ("ACS freely admits that it decided to postpone indefinitely the symposium honoring Dr. Passer because Dr. Passer had filed discrimination charges against ACS. There is therefore no doubt that Dr. Passer was engaging in protected conduct and that he was penalized because of it."); *Baker*, 855 F. Supp. at 376 ("A fundamental tenet of American jurisprudence historically is that no one may penalize another for exercising his or her right to pursue or participate in legal or equitable actions.").

"[a]s for Hopkins' claim that the defendants retaliated against him by firing him, his complaint fails to state the first requirement of such a claim, because it does not allege sufficient facts to establish that he was engaged in a statutorily protected form of expression **when he was fired** in October 2007 . . . . [because his actions constituting protected expression occurred] months *after* the school district fired him") (citation omitted and some emphasis added); *Hawk v. Atlanta Peach Movers, Inc.*, Civil Action File No. 1:10–CV–0239–JFK, 2011 WL 1533024, at *8 (N.D. Ga. Apr. 21, 2011) (context of summary judgment) ("The first and third *prima facie* elements require Plaintiff to show that he engaged in statutorily protected speech and that this protected speech was causally related to his termination. Plaintiff Hawk is unable to establish these elements. Plaintiff Hawk contacted the EEOC and completed an intake questionnaire with an accompanying letter. He also submitted a charge of discrimination to the EEOC. However, all of Plaintiff's complaints to the EEOC occurred *after* Defendant had terminated his employment. Assuming that Plaintiff's complaints to the EEOC constitute protected expression, the court finds that no reasonable jury could conclude that he is able to show a causal connection between these complaints and his termination. At the time Defendant APM made the decision to fire him, Plaintiff had made no complaints of discrimination to the EEOC.") (internal citations omitted); *Male v. Tops Markets, LLC*, No. 08-CV-6234, 2010 WL 4319769, at *3 (W.D.N.Y. Oct. 29, 2010) ("To establish a claim for post-termination retaliation under Title VII, Plaintiff would

have to allege facts sufficiently plausible to show that she *was engaged in a protected activity (for example, the filing of the EEOC complaint or this lawsuit)*, in an attempt to protect her rights under Title VII.") (emphasis added); *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006) ("Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) *because* he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'") (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added).  The third prong of a *prima facie* retaliation claim, that is, the causal relationship prong, is also absent for this same reason.  In other words, because Chapman's EEOC charge regarding Western Express's negative employment references occurred after the prospective employers received those references in September of 2010, he cannot establish a causal relationship between the two.  Thus, plaintiff's retaliation claim against Western Express is due to be dismissed with prejudice

14.    As an ancillary matter, the undersigned need address the numerous pleadings filed by Chapman, mostly in the Western Express case, both before and after entry of the stay order on May 26, 2011 (*see* CA 10-0675-WS-C, Docs. 77, 82-84 & 88-95). As previously indicated, the Rule 16(b) scheduling order entered in the Western Express case specifically provided that "[m]otions for leave to amend the pleadings and to join other parties must be filed no later than **March 31, 2011**."   (Doc. 56, ¶ 4.)

Therefore, all motions to amend the complaint—or filings that can be construed to request such relief—filed by Chapman after March 31, 2011 in the Western Express case (CA 10-0675-WS-C, Docs. 77, 84, 94 & 95)[8] are **DENIED AS UNTIMELY FILED**.[9]

---

[8]    In light of the contents of this report and recommendation, the undersigned finds **MOOT** Documents 77 and 82-84 in CA 10-0675-WS-C and Document 10 in CA 11-0180-WS-C.

[9]    In addition, all documents filed by Chapman after entry of the stay order on May 26, 2011 (*see, e.g.,* CA 10-0675-WS-C, Doc. 86, at 2-3 ("Based on the information gathered during the conference and after consideration of all pertinent pleadings in the three case, the undersigned will issue a report and recommendation in each case that plaintiff's claims be dismissed for the reasons discussed with him during the status conference. Plaintiff will of course have an opportunity to file objections to the report and recommendations once they are issued. But until then—in the interest of conserving the resources of the Court and the parties and promoting the efficient resolution of this matter—the undersigned **ORDERS** the schedule in all three cases **STAYED**.")) are due to be **STRICKEN**.  Prior to entry of the stay, plaintiff was cautioned by Chief Judge Steele that he was hurting his cases by filing multiple, duplicative documents that were unnecessarily clogging the processing of his claims, and he was ordered to desist from doing so. (CA 10-675-WS-C, Doc. 48, at 6) Indeed he was expressly "*cautioned that failure to abide by this requirement in the future may result in his filings being stricken without prior notice for failure to abide by the orders of this Court and for needlessly multiplying these proceedings.*" (*Id.* (emphasis in original).)  Rule 12(f)(1) of the Federal Rules of Civil Procedure provides that "[t]he court may [on its own] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  The power to strike a pleading "is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions."  *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) (citations omitted).  Even though a *pro se* plaintiff's pleadings are to be construed liberally, "this does not extend to a *pro se* litigant's failure to comply with federal procedural rules, local court rules, or orders of the court."  *Taylor v. Dept. of Human Resources & Child Support*, Civil Action No. 10-00032-KD-B, 2010 WL 991592, *1 (S.D. Ala. Feb. 26, 2010), *report & recommendation adopted*, 2010 WL 991603 (S.D. Ala. Mar. 16, 2010); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.) ("Still, once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.  These rules provide for sanctions for misconduct and for failure to (Continued)

## CONCLUSION

While plaintiff agreed to voluntarily dismiss his claims against Western Express and Southern Refrigeration during the status hearing on May 19, 2011, consistent with Rule 41(a) of the Federal Rules of Civil Procedure, the undersigned does not rely upon Chapman's agreement in this regard as the sole basis for dismissing his claims against these defendants. Instead, the undersigned also specifically finds that plaintiff has not and cannot assert a viable Title VII, ADEA or conspiracy claim against either Western Express or Southern Refrigeration; therefore, his complaints against Western Express and Southern Refrigeration are due to be **DISMISSED WITH PREJUDICE**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 10th day of August, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

comply with court orders."), *cert. denied*, 493 U.S. 863 (1989). Therefore, all documents filed by plaintiff after the undersigned's order staying the proceedings of all three cases, in particular Documents 88-96 in CA 10-0675-WS-C, are **STRICKEN** from the record.

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[10]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED. R. CIV. P. 72(b)(2).